UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Timothy A. Cosman, )<br>)<br>Defendant. ) | Criminal No. 18 CR 20020 |

**THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM**

The United States of America, through its attorneys John C. Milhiser, United States Attorney for the Central District of Illinois, and Ryan Finlen, Assistant United States Attorney, hereby submits the following Sentencing Memorandum.

**I.    INTRODUCTION**

On May 2, 2018, the defendant was indicted, by a grand jury sitting in the Central District of Illinois, on three counts of Bank Fraud in violation of 18 U.S.C. § 1344. *See* the Revised Presentence Investigation Report, hereinafter referred to as "PSR," at ¶ 1.

On March 27, 2019, as part of a written plea agreement, the defendant pleaded guilty to Count 1 of the indictment that alleged Bank Fraud. PSR ¶ 5. Count 1 charged that from about February 2014, and continuing to April 2016, in the Central District of Illinois, and elsewhere, the defendant knowingly executed a scheme to defraud Busey Bank to obtain moneys and funds from the bank by false and fraudulent pretenses, representations, and promises. PSR ¶ 1.

Pursuant to 18 U.S.C. § 3553, the Mandatory Victims Restitution Act ("MVRA") and for the reasons outlined below, this Court should sentence the defendant to a term of imprisonment of 50 months, followed by a 5-year term of supervised release, no fine, and restitution in the amount of $2,438,841.54.

## II.     FACTUAL BACKGROUND

In February 2014, the defendant began his relationship with Busey Bank by obtaining a revolving line of credit and a loan to refinance his farming equipment. PSR ¶ 10. Between April and May 2014, the defendant applied and received several additional loans from Busey Bank. PSR ¶ 11. To ensure he had sufficient collateral for these loans, the defendant submits an AG Balance Sheet in July 2014. PSR ¶ 12. Additionally, the defendant certifies that the December 26, 2014 balance sheet he submitted is accurate. *Id.*

The defendant included in that December 26, 2013, balance sheet a form labeled Schedule 9 –Machinery, Equipment, & Trucks. This sheet listed farming machinery, equipment, and trucks that the defendant did not own. PSR ¶ 12. Equipment listed on the balance sheet actually belonged to the defendant's father, Bruce Cosman.

In December 2014, the defendant applied and received an additional loan from Busey Bank. PSR ¶ 11. As part of that loan application, the defendant submitted a similar AG Balance Sheet as to the one from December 2013. The defendant included in the AG Balance Sheet an itemized list of farming machinery, equipment, and trucks he did not own. PSR at ¶ 12.

When the defendant was informed he would need to put forward more collateral to receive approval for his loan, he created and forged a fraudulent promissory note. PSR

2

at ¶ 15. The fraudulent promissory note, purportedly from Bruce Cosman, stated the elder Cosman owed the defendant $1,562,335.00. *Id*.

In March 2015, the defendant received a loan of $475,000.00 to purchase cattle. PSR ¶ 16. In the summer of 2015, after he was not making required payments, Busey began requesting additional proof of how the defendant was applying the proceeds from these loans. PSR ¶ 17. The defendant falsified an invoice for 250 head of cattle to continue to deceive the bank. PSR ¶ 18.

In 2015, Busey Bank required the defendant to turn over proceeds from the sales of his crops directly to Busey. In their effort to receive the proceeds Busey Bank sent notices to grain elevators informing them of a lien against the defendant. Busey Bank asked those grain elevators to make checks payable to both the defendant and Busey Bank. PSR ¶ 17.

On November 4, 2015, a grain elevator issued a check made out to "Tim Cosman & Busey Bank" for $33,391.60. The defendant undermined Busey Bank's attempts to secure repayment for his outstanding loans by forging the signature of a Busey Bank employee on that check and presenting it to another bank.

Prior to indictment, the defendant on June 30, 2016, filed for bankruptcy in the Northern District of Illinois under Case No. 16-81577. Although Busey Bank withdrew the claim Busey Bank filed in the bankruptcy matter pursuant to a settlement agreement, Busey Bank later initiated an adversary proceeding on October 30, 2017. "Busey's Complaint to Determine Non-Dischargeability of Debt," Busey Bank v. Timothy Cosman (*In re* Cosman), Ch. 7 Case No. 16-81577, Adv. No. 17-96028 (N.D.Ill. Oct. 30, 2017). In that

complaint, Busey Bank objected to the discharge of debts totaling $2,963,841.54 owed by the defendant to Busey Bank. Those debts formed the basis of the instant charges. Busey Bank's adversarial action is currently pending, and this Court should order restitution as part of the sentence regardless of the existence or status of the pending bankruptcy matter

As a result of the defendant's scheme and misrepresentations, the defendant subjected Busey Bank to a potential loss of $8,950,000. PSR ¶ 19. Even with Busey Bank's diligent efforts to recover its losses from the fraudulently obtained funds, Busey Bank suffered a loss of $2,963,841.54.

### III.   LEGAL FRAMEWORK

Title 18, United States Code, Section 3553, requires this Court to consider various factors in determining a sentence that is sufficient but not greater than necessary to achieve certain goals. Those factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; and (3) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed correctional treatment in the most effective manner.

Restitution is mandatory under the Mandatory Victim Restitution Act of 1996. 18 U.S.C. § 3663A. The procedures for determining restitution are set forth under 18 U.S.C. § 3664. Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. 18 U.S.C. § 3664(e). It is the government's burden to demonstrate the amount of the loss sustained by a victim as a result of the

offense. 18 U.S.C. § 3664(e). Victims to whom restitution must be made include those "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2).

However, the penal system is interested in both punishing and rehabilitating the offender. *Kelly v. Robinson*, 479 U.S. 36, 52 (1986). "The decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant." *Id.* If a victim had the power to waive the collection of criminal restitution, it would hinder the benefit society would receive as a whole. *Id.*

## IV. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

When sentencing this and any defendant, the Court shall consider the seven enumerated factors set forth under 18 U.S.C. § 3553, to ensure that the sentence is sufficient but not greater than necessary. A careful consideration of the § 3553(a) factors substantiates that a guideline sentence should be applied.

*§ 3553(a)(1) The nature and circumstances of the offense and the history and characteristics of the defendant.*

The nature of the offense is fraud. Here, the defendant repeatedly deceived Busey Bank through false material representations in order to inflate his assets. This was not a one-time lapse of judgment by the defendant. The defendant knowingly concocted this scheme to continue to obtain funds from the bank when he did not have the collateral to cover any potential losses. The defendant's pattern of behavior of deceit not only resulted in large financial losses for Busey Bank but also resulted in the loss of his father's farming equipment.

After making false material representations on documents he provided Busey Bank, the defendant took his scheme to another level when he began to create and forge documents. The defendant created a fraudulent invoice for the purchase of cattle. He then forged two separate signatures: (1) when Busey Bank intervened in an attempt to collect repayment, the defendant forged the signature of Busey Bank's Vice President, Jeffrey Rohlwing; (2) when Busey Bank asked for more collateral, the defendant provided a promissory note for over $1.5 million purportedly signed by his father, Bruce Cosman. It is evident the defendant could not stop himself from continuing his scheme.

*§ 3553(a)(2) The need for the sentence imposed –*
  *(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*
  *(B) to afford adequate deterrence to criminal conduct.*
  *(C) to protect the public from further crimes of the defendant*
  *(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner*

The defendant carried out a serious financial crime, which caused the loss of over $2.9 million. Here, a Guidelines sentence is necessary under section 3553(a) because anything less will denigrate the seriousness of the defendant's crime. A variance on his sentence will not promote respect for the law, will not provide just punishment, and will not afford adequate deterrence of criminal conduct.

*§ 3553(a)(3) The kinds of sentences available*

The recommended sentence is within the Guidelines range and therefore reflects the kinds of sentences and the sentencing ranges established by the Sentencing Commission in its Guidelines and policy statements. See 18 U.S.C. § 3553(a)(4)-(5). The

defendant is ineligible for probation because the offense is a Class B Felony. 18 U.S.C. § 3561(a)(1). PSR ¶ 85.

*§ 3553(a)(4) The kinds of sentence and the sentencing range established for –*
  *(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –*
    *(i)   issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and*
    *(ii)  that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced.*

Under the Sentencing Guidelines, the defendant's total offense level is 22. PSR ¶ 34. The defendant's criminal history score of 1 establishes a criminal history category of I. PSR ¶ 39. Consequently, the defendant's advisory guideline sentence range is 41-51 months imprisonment. PSR ¶ 62. A sentence of imprisonment is needed in this case, especially because the applicable guideline range is in Zone D of the Sentencing Table. PSR ¶ 63.

Importantly, however, the defendant's offense level of 22 is driven primarily by the fact that the defendant subjected Busey Bank to a potential intended loss of $8,950,500. PSR ¶¶ 19, 26. This loss amount falls at the approximately 90% mark of the range set forth at USSG § 2B1.1(b)(1)(J). A 50-month term of imprisonment is a the comparable, 90% mark between the low-end of the guideline range and the upper end of the guideline range.

*§ 3553(a)(5)Any pertinent policy statement –*
   *(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and*
   *(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.*

The government is not aware of any pertinent policy statements.

*§ 3553(a)(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.*

A Guideline sentence would avoid or reduce disparity with sentences imposed on similar defendants in similar cases. The Guideline sentence should be given serious consideration because it is "the product of careful study based upon extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 522 U.S. 38, 46 (2007).

Here, a sentence within the Guideline range is comparable other defendants convicted of bank fraud. *See United States v. Longust*, 685 Fed.Appx. 496 (7th Cir. 2017) (defendant with guideline range of 121 to 151 months was appropriately sentenced to 121 months); *United States v. Barr*, 2019 WL 1594888, at *3 n. 1 (N.D.Ill. April 12, 2019) (defendant with guideline range of 121 to 151 months was sentenced to 87 months); and *United States v. Asmussen*, 2017 WL 6733725 (N.D.Ill. Dec. 18, 2017) (defendant with guideline range of 78 to 97 months sentenced to 58 months).

*§ 3553(a)(7) The need to provide restitution to any victims of the offense.*

The victim in this case suffered a total loss of $2,963,841.54. Even if restitution was not mandatory (it is), restitution is certainly warranted in this case. The impact of Mr.

Cosman's scheme on Busey Bank is clearly articulated by Busey Bank Senior Vice President Steven Henderson in his victim impact statement attached hereto as "Exhibit 1."

As Mr. Henderson explained, Busey Bank strives to employ the highest quality associates in its branches. Attracting and retaining reliable employees costs Busey Bank money to fund programs designed to benefit employees. Not only did the defendant's fraud victimize Busey Bank, but it also put Busey Bank's employees at risk of losing valuable programs.

This Court must order restitution for the loss in the amount of $2,963,841.54.

V.    **CONCLUSION**

For the reasons stated above, this Court, pursuant to 18 U.S.C. §§ 3553 & 3663A, should impose a sentence of a term of imprisonment of 50 months, followed by a 5-year term of supervised release, no fine, and restitution in the amount of $2,438,841.54.

        Respectfully submitted,

        JOHN C. MILHISER
        United States Attorney

By:    s/ *Ryan Finlen*
        Assistance United States Attorney
        Office of the United States Attorney
        Central District of Illinois
        201 South Vine Street, Suite 226
        Urbana, Illinois 61802
        *Tel.* (217) 373-5875
        *Fax* (217) 373-5891
        Ryan.Finlen@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participant(s) in the case.

          */s/ C. Ryan Finlen*
          C. Ryan Finlen
          Assistant United States Attorney